IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:09CV125-MR-DSC

| | |
|---|---|
| **FLICK MORTGAGE INVESTORS, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM AND RECOMMENDATION** |
| **CHICAGO TITLE INSURANCE COMPANY,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the "Defendant's Motion to Dismiss" (document #5) and "Memorandum of Law in Support of Defendant's Motion to Dismiss" (document #6), both filed April 27, 2009; and the Plaintiff's "Brief in Opposition to Motion to Dismiss" (document #12) filed May 18, 2009. On May 27, 2009, Defendant filed its "Reply to Flick's Opposition to Defendant's Motion to Dismiss" (document #14).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the Motions are ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the Defendant's Motion to Dismiss be <u>denied</u>, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This is an action alleging breach of contract and bad faith denial of an insurance claim. Accepting the allegations of the Complaint as true, as we must at this early stage in the proceeding,

Plaintiff Flick Mortgage Investors, Inc. ("Flick") committed to providing a loan in the principal amount of $459,600.00 to Charles Dixon for the purpose of refinancing the current mortgage on his home located at 6129 Providence Glen Road, Charlotte, North Carolina ("Property"). Mr. Dixon selected Armina D. Swittenberg as the closing attorney for the transaction. Swittenberg was an approved attorney for Defendant Chicago Title Insurance Company ("Chicago Title"). Chicago Title issued to Flick a title insurance commitment bearing Commitment Number LX2001-00935 ("Title Commitment") and an insured Closing Protection Letter dated August 30, 2001 ("CPL"). The CPL states :

> When title insurance of Chicago Title Insurance Company is specified for your protection in connection with closing of real estate transactions in which you are to be . . . a lender secured by a mortgage . . . of an interest in the land, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by . . .the above Approved Attorney, and when such loss arises out of : . . . 1. Failure of the Approved Attorney to comply with your written closing instructions. . . or 2. Fraud or dishonesty of the . . . Approved Attorney in handling your funds or documents in connection with such closings.

Flick provided to Swittenberg a set of loan closing documents including specific closing instructions that required Swittenberg to pay off all liens of record encumbering the Property prior to disbursement of the funds from the Flick loan and specifically referenced a payoff disbursement of $459,641.00 to the home equity lien. The specific closing instructions also required that the Flick mortgage must record in first lien position on or prior to the disbursement date of the Flick loan. Swittenberg closed the transaction in a fraudulent manner by failing to follow Flick's closing instructions, failing to use the proceeds loaned by Flick to pay off and satisfy the prior mortgage on title, the home equity lien, and failing to remit the title insurance premium to Chicago Title in order to obtain an actual title insurance policy. Additionally, Swittenberg recorded the Flick mortgage

subordinate to the home equity lien, which she failed to pay off or satisfy. After the closing of the loan but prior to the discovery of the defalcations associated with the closing, Flick sold the loan to GMAC Mortgage subject to certain repurchase or "make-whole" provisions. Thereafter, Dixon defaulted on the Flick loan. Flick notified Chicago Title of its title insurance claim on November 1, 2006. Chicago Title acknowledged the claim in a letter dated November 8, 2006. In a civil action in Mecklenburg County Superior Court, the Court found that Wachovia Bank was the holder of the home equity lien and that the home equity lien was superior to the Flick mortgage. On October 8, 2008, GMAC Mortgage demanded that Flick repurchase the Flick loan pursuant to the terms of their agreement since the loan was not a first priority lien. After this demand, Flick requested Chicago Title pay the repurchase price demanded by GMAC Mortgage. In a letter dated October 16, 2008, Chicago Title denied Flick's claim stating that "[u]nless Flick repurchases the loan, Flick will not have sustained an actual loss as a result of Ms. Swittenberg's actions at the loan closing."

On February 27, 2009, Flick filed a complaint in the Superior Court of Mecklenburg County, North Carolina alleging that Chicago Title's failure to pay the repurchase price constituted a breach of the CPL (Count I), a breach of the commitment for title insurance (Count II) and a bad faith denial of an insurance claim (Count III). On March 27, 2009, Chicago Title removed the state court action to this Court, alleging diversity. Removal has not been challenged and appears to be proper. On April 15, 2009, GMAC Mortgage filed a complaint in this Court against Flick for breach of contract by not repurchasing the Flick loan. On April 27, 2009, Defendant filed the subject "Motion to Dismiss," which has been fully briefed and is, therefore, ripe for disposition. On May 21, 2009, the Honorable Martin Reidinger ordered that for pretrial matters, the Flick action and the GMAC action would be consolidated.

## II. DISCUSSION OF CLAIMS

### A. Standard of Review

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

As a general rule, a plaintiff's complaint need only provide a short statement in plain English of the legal claim showing that the pleader is entitled to relief that is also sufficient to provide the defendant with "fair notice" of the claim and its basis. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, however, the pleader must show through his allegations that it is plausible, rather than merely speculative, that he is entitled to relief. Twombly, 550 U.S. at 555-56. A complaint must do more than merely "*avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008) (internal quotation marks omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

### B. Breach of Contract under the Closing Protection Letter (Count I)

Chicago Title moves that Flick's breach of contract claim under the CPL should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Flick has not suffered an "actual loss" that is reimbursable under the CPL. Chicago Title argues that although GMAC Mortgage has demanded that Flick repurchase the mortgage, Flick has not done so. Therefore, Flick has not suffered an actual loss and instead, is seeking to recover for a potential legal liability. Consequently, Chicago Title argues that Flick has failed to state a claim for breach of contract under the CPL. Flick contends that there is nothing in the CPL that defines "actual loss" as "out-of-pocket loss." Flick argues that it has clearly suffered actual loss in that GMAC Mortgage has demanded that Flick repurchase the loan and forced Flick to litigate GMAC Mortgage's repurchase demand resulting in undue delay and expense.

The law regarding the interpretation of CPLs is far from uniform. See James Bruce Davis, The Law of Closing Protection Letters, 36 Tort & Ins L. J. 845 (2001) and John C. Murray, Closing Protection Letters: What Is (and Is Not) Covered?, 561 PLI/Real 193 (New York: 2008). The question as to whether a CPL constitutes insurance has yet to be answered definitively in North Carolina. Because of this conflict in authority, the undersigned will respectfully recommend that Chicago Title's Motion to Dismiss Count I be <u>denied</u> and that Flick be allowed to conduct discovery on this issue. And, of course, as in regard to all claims, Chicago Title will be entitled to renew their factual and legal arguments after the conclusion of discovery in a timely filed motion for summary judgement.

### C. Breach of Contract under the Title Commitment (Count II)

Chicago Title moves that Flick's breach of contract claim under the Title Commitment

should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Flick has failed to plead the existence of an insurance contract. Chicago Title argues that the document attached to Flick's Complaint and alleged by Flick to be a Title Commitment is nothing more than an endorsement to a commitment for title insurance and is not a contract because it contains no promises. Flick asserts that the CPL, the Title Commitment and the final title policy should be construed together in light of their necessary interdependence upon each other. Flick argues that but for Chicago Title's own approved attorney's malfeasance, a final title policy would have been issued and therefore, Flick is entitled to specific performance of the Title Commitment and issuance of a final title policy. Furthermore, Flick argues that by actively participating in the declaratory action in state court involving Wachovia Bank, Chicago Title ratified the Title Commitment.

Based on Flick's allegations, rather than dismissal at this early stage of the proceeding, the undersigned respectfully recommends that Chicago Title's Motion to Dismiss on Count II be <u>denied</u> and that Flick be allowed to conduct discovery on this point. And, of course as noted above, Chicago Title will be entitled to renew their factual and legal arguments after the conclusion of discovery in a timely filed motion for summary judgement.

### D. **Baid Faith Denial of Insurance (Count III)**

Chicago Title moves that Flick's bad faith denial of insurance claim should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for three reasons: 1) because Flick has failed to identify what section of N.C. Gen. Stat. § 58-63-15 Chicago Title allegedly violated or how the violation of that statute proximately caused any injury to Flick; 2) because Counts I and II fail to state claims for which relief may be granted, there is no support for a bad faith claim; and 3) because of Chicago Title's belief that Flick has sustained no actual loss, the denial of Flick's claim

was in good faith and does not support a claim for bad faith.  Flick contends that they have suffered an actual loss and have sufficiently stated claims upon which relief may be granted.  Furthermore, Flick contends that when they first notified Chicago Title of the potential claim, Flick was fully capable of repurchasing the loan from GMAC Mortgage.  Flick argues further that it was only after they lost the financial ability to repurchase the loan that Chicago Title first asserted it would provide no coverage unless and until Flick actually repurchased the loan.

In order to recover for an insurance company's bad faith refusal to settle a claim, the plaintiff must prove 1) a refusal to pay after recognition of a valid claim, 2) bad faith and 3) aggravating or outrageous conduct.  Lovell v. Nationwide Mutual Ins. Co., 424 S.E.2d 181, 184 (N.C.App. 1993).  As stated above, the undersigned respectfully recommends that Flick be allowed to conduct discovery on Count I and Count II of their Complaint.  Therefore, because dismissal of these claims is not recommended, the undersigned respectfully recommends that Flick be allowed to continue discovery on whether or not Chicago Title's denial of the title claim was in bad faith.  However, as noted above, this does not preclude Chicago Title from renewing their factual and legal arguments after the conclusion of discovery in a timely filed motion for summary judgement.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Defendant's "Motion to Dismiss" (document #5) be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same.  Page v. Lee, 337 F.3d 411,

416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Martin Reidinger.

**SO RECOMMENDED.**

Signed: June 18, 2009

David S. Cayer
United States Magistrate Judge