# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:09-cv-125-RJC-DSC
# CONSOLIDATED

| | |
|---|---|
| GMAC MORTGAGE, LLC, </br></br> Plaintiff, </br></br> vs. </br></br> FLICK MORTGAGE INVESTORS, INC., </br></br> Defendant. | |
| FLICK MORTGAGE INVESTORS, INC., </br></br> Plaintiff, </br></br> vs. </br></br> CHICAGO TITLE INSURANCE COMPANY, </br></br> Defendant. | **ORDER** |

**THIS MATTER** is before the Court on GMAC Mortgage, LLC's ("GMAC") Motion for Entry of Final Judgment under Rule 54(b) and Motion for Judgment on the Pleadings Under Rule 12(c), (Doc. No. 27), and its accompanying Memorandum, (Doc. No. 28). Flick did not respond in opposition to this motion.

I. **BACKGROUND**[1]

In August 2001, Charles and Michelle Dixon refinanced their home mortgage loan using the services of attorney Armina Swittenberg. Chicago Title issued a commitment for title insurance and a Closing Protection Letter ("CPL") to Flick before Flick made the loan to the Dixons. Swittenberg, who was an Approved Attorney for Chicago Title, fraudulently closed the transaction and misappropriated the loan funds so that the loan is now worthless. The CPL obligated Chicago Title to reimburse Flick for "actual loss incurred by you in connection with such closings when conducted by . . . the Approved Attorney," and when losses arose out of the failure of the Approved Attorney to follow Flick's written closing instructions, or from fraud and dishonesty. GMAC alleges that on September 6, 2001, pursuant to the Correspondent Agreement for Purchase and Sale of Residential Mortgage Loans ("Correspondent Agreement"), Flick assigned the mortgage loan to GMAC and executed an assignment of deed of trust, transferring and assigning to GMAC all of Flick's rights, title and interest in and to the deed of trust and related title insurance documents. (Doc. No. 55 at 6).

Once the fraud was discovered, GMAC demanded that Flick repurchase the loan pursuant to the terms of their Correspondent Agreement. Flick accordingly requested that

---

[1] The Fourth Circuit expressed a strong preference for detailed factual background and analysis in the context of Rule 54(b) motions. See Braswell Shipyards, Inc. v. Beazer East, Inc., 2 F.3d 1331, 1336 (4th Cir. 1993) ("Where the district court is persuaded that Rule 54(b) certification is appropriate, the district court should state those findings on the record or in its order. The expression of clear and cogent findings of fact is crucial.") (citing Allis-Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360, 365 (3d Cir. 1975) ("The variety and number of factors which may be present in any one case highlights the importance of the district court's evaluation and articulation of those factors leading to its grant of Rule 54(b) certification.")). "In fact, numerous courts have held that where the district court's Rule 54(b) certification is devoid of findings or reasoning in support thereof, the deference normally accorded such a certification is nullified." Braswell, 2 F.3d at 1336.

Chicago Title pay the repurchase price demanded by GMAC. In a letter dated October 16, 2008, Chicago Title denied Flick's claim, stating that "[u]nless Flick repurchases the loan, Flick will not have sustained an actual loss as a result of Ms. Swittenberg's actions at the loan closing." As a result, Flick sued Chicago Title on February 27, 2009, alleging that Chicago Title's failure to pay the repurchase price constituted a breach of the CPL (Count I), a breach of the commitment for title insurance (Count II), and a bad faith denial of an insurance claim (Count III). (Doc. No. 1 at 11-13).

On April 15, 2009, GMAC sued Flick for breach of contract. (Case No. 3:09-cv-154, Doc. No. 1). GMAC alleged that Flick breached the terms of the parties' Correspondent Agreement by refusing to repurchase the Dixon refinance loan. (Id. at 5-6). On May 21, 2009, GMAC's suit against Flick was consolidated with Flick's suit against Chicago Title. (Doc. No. 13). On December 14, 2009, GMAC filed a Motion for Judgment on the Pleadings against Flick, who "readily agreed" that GMAC was entitled to a consent judgment.[2] (Doc. No. 41 at 3: Flick Response to GMAC's Motion for Appointment of Receiver and Intervention). On May 25, 2010, this Court granted GMAC's unopposed motion for default, disposing of all claims between GMAC and Flick. (Doc. No. 25). The Court deferred entry of final judgment "pending the resolution of all claims against all parties in this matter or upon determination that final judgment is warranted pursuant to Rule 54(b) of the Federal Rules of Civil Procedure." (Id. at 3). On June 25, 2010, GMAC filed a Motion for Judgment on the Pleadings under Rule 12(c) and for Entry of Final Judgment pursuant to Rule 54(b), (Doc. No. 27), in which GMAC seeks

---

[2] While these actions were underway, Flick was administratively dissolved on February 24, 2010. This Court noted in its March 7, 2011 Order, (Doc. No. 53), that "Flick appears to be insolvent and thus unable not only to repurchase the loan from GMAC but also to pursue its action against Chicago Title."

3

principal damages in the amount of $535,005.61, plus $31,532.81 for attorneys' fees. Flick did not respond.

GMAC filed a Motion to Intervene in Flick's lawsuit against Chicago Title on June 30, 2010, (Doc. No. 31), and by Order dated March 7, 2011, (Doc. No. 53), this Court permitted GMAC to file a Complaint in Intervention against Chicago Title. See (Doc. No. 55). GMAC asserts the following claims against Chicago Title in its Intervention Complaint: declaratory judgment for indemnification from and against its losses sustained as a result of the bad acts of Chicago Title's Approved Attorney (Count I), breach of contract for the Approved Attorney's failure to close the loan in compliance with the instructions in the CPL (Count II), breach of contract for Chicago Title's failure to indemnify GMAC and Flick (Count III), bad faith denial of an insurance claim (Count IV), and a claim for damages under a theory of respondeat superior (Count V). (Id.).

On April 6, 2011, Flick and Chicago Title entered into a Settlement and Assignment Agreement, (Doc. No. 61-9), in which Flick "settled its claims against Chicago Title and assigned to Chicago Title any claims Flick might have related to the subject matter of this action." (Doc. No. 61-1 at 3). Flick and Chicago Title filed a Joint Motion to Dismiss Flick's Complaint Against Chicago Title on June 3, 2011, (Doc. No. 61), and GMAC opposed the Motion, (Doc. No. 65). On March 31, 2012, this Court granted Flick and Chicago Title's Joint Motion to Dismiss and allowed Flick to dismiss its Complaint against Chicago Title.

## II. LEGAL STANDARD

As outlined above, in granting GMAC's Motion for Judgment on the Pleadings, (Doc. No. 25), this Court deferred entry of final judgment pending the resolution of all claims against all parties in this matter, or upon determination that final judgment is warranted pursuant to Rule

54(b) of the Federal Rules of Civil Procedure. GMAC now moves for final judgment pursuant to Rule 54(b), which provides, in pertinent part:

> **(b) Judgment on Multiple Claims or Involving Multiple Parties.**
> When an action presents more than one claim for relief ... or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."

FED. R. CIV. P. 54(b). The purpose of a Rule 54(b) certification is "to prevent piecemeal appeals when multiple claims are resolved in the course of a single lawsuit" and "to provide relief to litigants that would suffer undue hardship if final judgment is not entered on the adjudicated claim prior to the resolution of the unadjudicated claims." Braswell, 2 F.3d at 1335.

The Court's determination of whether to effectuate a Rule 54(b) certification involves two steps: first, the Court must determine whether the judgment is final with respect to the relevant claims or parties. Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7 (1980). A judgment "must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" Id. (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956)).

Second, the Court must determine whether there is any "just reason for delay" in entering judgment. Id. at 8. The Court should consider "judicial administrative interests as well as the equities involved." Id. The Fourth Circuit has listed several factors the Court should address, if applicable, when determining whether there is just reason for delay in the entry of judgment:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of

competing claims, expense, and the like.

Braswell, 2 F.3d at 1335-36 (quoting Allis-Chalmers, 521 F.2d at 364); see also Curtiss-Wright, 446 U.S. at 8; Fox v. Baltimore City Police Dep't, 201 F.3d 526, 531 (4th Cir. 2000).

## III.	DISCUSSION

### A.	Finality of Judgment

The Court finds that judgment should be entered pursuant to Rule 54(b). The first step of Braswell's two-part inquiry is easily met. See Braswell, 2 F.3d at 1335 ("First, the district court must determine whether the judgment is final."). This consolidated action involves a complaint by GMAC against Flick (the "GMAC/Flick litigation"), a complaint by Flick against Chicago Title,[3] and a complaint by GMAC against Chicago Title (the "GMAC/Chicago Title litigation"). The Court's May 25, 2010 Order, (Doc. No. 25), resolved GMAC's breach of contract claim against Flick and is "'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" Curtiss-Wright, 446 U.S. at 7 (quoting Sears, 351 U.S. at 436).

### B.	Just Reason for Delay

The second step in Braswell's two-part inquiry is also satisfied, albeit not as easily as the first. See Braswell, 2 F.3d at 1335 ("Second, the district court must determine whether there is no just reason for the delay in entry of judgment."). In determining whether there is no just reason for delay in the entry of judgment, the Court considers five factors set forth in Braswell. See 2 F.3d at 1335-36.

#### 1.	Relationship Between Adjudicated and Unadjudicated Claims

---

[3] Because this Court dismissed Flick's Complaint against Chicago Title in a separate order, the Court does not address the litigation between those parties in this Order.

The first factor that the Court considers in determining whether there is just reason for delay is the relationship between the adjudicated and unadjudicated claims. Braswell, 2 F.3d at 1335. Although the GMAC/Flick litigation and the GMAC/Chicago Title litigation arise out of a common set of facts, i.e. the circumstances surrounding the unsuccessful refinance of the Dixon mortgage loan, the legal claims in the two complaints are distinct.

In the GMAC/Flick litigation, GMAC sued Flick for breach of contract, alleging that Flick breached the terms of the parties' Correspondent Agreement by refusing to repurchase the Dixon refinance loan. (Case No. 3:09-cv-154, Doc. No. 1). This suit was resolved in GMAC's favor through the uncontested entry of default on May 25, 2010. (Doc. No. 25). GMAC's breach of contract claim in the GMAC/Flick litigation differs significantly from the unadjudicated claims in the GMAC/Chicago Title litigation. Whereas GMAC's claim against Flick was based on Flick's refusal to repurchase the Dixon loan, GMAC's claims against Chicago Title arise out of the bad acts of Chicago Title's Approved Attorney, Chicago Title's failure to indemnify GMAC and Flick, and Chicago Title's denial of Flick's insurance claim. (Doc. No. 55). "The dissimilar nature of the unresolved issues in the two cases are such that it does not appear that an appellate court would have to decide the same issues more than once even if there are subsequent appeals of both the cases." MCI Constructors, Inc. v. Hazen and Sawyer, P.C., No. 1:99-cv-2, 2009 WL 1173041, at *4 (M.D.N.C. Apr. 28, 2009).

2. Possibility that the need for review might be mooted

The Court next considers the possibility that the need for review might or might not be mooted by future developments in the district court. Braswell, 2 F.3d at 1335. In the GMAC/Chicago Title litigation, Chicago Title is the sole defendant. In the GMAC/Flick litigation, Flick is the sole defendant. Accordingly, the entry of default

judgment in the GMAC/Flick litigation will not moot the remaining claims as to Chicago Title. See MCI, 2009 WL 1173041, at *4; Fox, 201 F.3d at 531.

        3.     Possibility that the same issue will be reviewed twice

The third factor that the Court considers in determining whether there is just reason for delaying the entry of final judgment is the possibility that the reviewing court might be obliged to consider the same issue a second time. Braswell, 2 F.3d at 1335. The Fourth Circuit cautioned in Fox that "[a] district court must be particularly wary of certification when new facts might come to light in those further proceedings that would 'provide a basis for questioning the soundness' of the appellate court's prior conclusions." 201 F.3d at 531. Here, the Court finds that "delaying the entry of judgment in the instant matter would not promote judicial economy. Seeing as there is virtually no overlap in the issues involved in the two cases, and the cases are at different stages of litigation, delaying judgment in the present matter will not change this fact." MCI, 2009 WL 1173041, at *4.

It should also be noted that Flick will not likely appeal entry of default judgment against it. When "GMAC requested a consent judgment from Flick in connection with its claim, Flick readily agreed." (Doc. No. 41 at 3). Considering Flick's apparent insolvency and its prior consent, it is unlikely that Flick will appeal an order finalizing a default to which it agreed.

        4.     Possibility of set-off

The Court also considers the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final. Braswell, 2 F.3d at 1335. But see Curtiss-Wright, 446 U.S. at 9 (noting that the "mere presence" of

nonfrivolous counterclaims "does not render a Rule 54(b) certification inappropriate"). There is only one claim for breach of contract in the GMAC/Flick litigation and there are no counterclaims. See (Case No. 3:09-cv-154, Doc. No. 1). There is, however, another active case which must be considered for set-off purposes - the GMAC/Chicago Title litigation.

If GMAC prevails in its ongoing suit against Chicago Title, GMAC's recovery in that litigation might be used to set-off GMAC's recovery from Flick in order to avoid a double recovery. However, with the other four factors weighing in favor of certification, the possibility of a set-off is not a strong enough factor to tip the balance in favor of further delay. See Curtiss-Wright, 446 U.S. at 6 ("Although the presence of General Electric's counterclaims and the consequent possibility of a setoff recovery were factors which weighed against certification, the court, in balancing these factors, determined that they were outweighed by the other factors in the case.").

     5.     Miscellaneous factors

Finally, the Court considers miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Braswell, 2 F.3d at 1335-36. In terms of solvency considerations, the Supreme Court stated in Curtiss-Wright that "the fact that General Electric is capable of paying either now or later is not a 'just reason for delay.' At most, as the District Court found, the fact that neither party is or will become insolvent renders that factor neutral in a proper weighing of the equities involved." 446 U.S. at 12. Flick admits that it is "financially enfeebled." (Doc. No. 41 at 3). The Curtiss-Wright analysis therefore applies to the present case in an inverse fashion. The fact that Flick appears to be

9

incapable of paying now or later is not a "just reason for delay." Id.

The Court also finds that "entering judgment pursuant to Rule 54(b) is equitable in that it fulfills the reasonable expectations of the parties." MCI, 2009 WL 1173041, at *5. Flick "readily agreed" that GMAC was entitled to a consent judgment and did not oppose GMAC's motion for Rule 54(b) certification. (Doc. No. 41 at 3). The Court concludes from Flick's actions, and inaction, that both Flick and GMAC desire the GMAC/Flick litigation to be finally adjudicated.

While the Court initially determined that entry of final judgment should be deferred, the landscape has changed significantly since the Court's entry of the May 25, 2010 Order granting GMAC's Motion for Default, (Doc. No. 25). First, in March 2011, GMAC intervened in Flick's suit against Chicago Title. Then, in April 2011, Flick settled its claims with Chicago Title. In June 2011, Flick and Chicago Title filed a joint motion to dismiss Flick's Complaint against Chicago Title. GMAC opposed their motion, fearing that if the Court granted the motion to dismiss Flick's claims against Chicago Title, GMAC's claims might be likewise extinguished. (Doc. No. 65 at 3). In light of these changes, the Court now determines that entry of final judgment pursuant to Rule 54(b) is proper and just. See Curtiss-Wright, 446 U.S. at 8.

C.  Damages

In June 2010, when GMAC filed its Motion for Entry of Final Judgment, GMAC's breach of contract damages totaled $535,005.61, which included $418,968.97 in principal due on the mortgage, $92,757.79 in accrued interest, $18,200.00 in escrow/impound funds due on the mortgage, late charges of $4,525.10, and $533.75 in other costs and fees. See (Doc. Nos. 28 at 2-3; 28-1 at 4). These repurchase damages are all expressly permitted under the parties'

Correspondent Manual, which provides that:

> The repurchase amount to be paid to GMACM under all circumstances shall include: The greater of either the original purchase price or par (if GMACM is the investor) or the remaining principal balance (if resold), plus any accrued interest, late charges, escrow deficiencies, servicing premium, and any other GMACM costs, administrative fees, expenses, attorneys fees for in-house and outside counsel and any other amounts which may relate to or be associated with the loan or loan repurchase.

(Id. at 6-8).

Flick does not dispute its liability to GMAC for breach of contract or the enforceability of the repurchase terms under the parties' Correspondent Manual. See (Doc. No. 25 at 2) ("counsel for the defendant informed the Court telephonically that the defendant consents to the plaintiff's motion"); (Doc. No. 41 at 3) (when "GMAC requested a consent judgment from Flick in connection with its claim, Flick readily agreed"). The Court finds that GMAC is entitled to principal damages of at least $535,005.61.[4]

GMAC also seeks recovery of its attorneys' fees. In North Carolina, a party may recover its attorneys' fees only if there are both statutory and contractual bases for such recovery. Stillwell Enters., Inc. v. Interstate Equip. Co., 266 S.E.2d 812, 814-15 (N.C. 1980). N.C. Gen. Stat. § 6-21.2 states:

> Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to [certain] provisions.

N.C. Gen. Stat. § 6-21.2(2) authorizes attorneys' fees in the amount of 15% of the outstanding

---

[4] The Court notes that because GMAC filed its Motion for Entry of Final Judgment in June 2010, the damages calculations, particularly with respect to accrued interest, may have changed. Therefore, the Court will require GMAC to file an affidavit establishing damages through March 31, 2012.

balance of the evidence of indebtedness when the amount is unspecified.[5] The term "evidence of indebtedness" refers to "any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money." Stillwell Enters., Inc., 266 S.E.2d at 817. The Correspondent Manual fits that description.

The Correspondent Manual contains the above attorneys' fees provision, as well as the following language:

> [Flick] shall indemnify and hold GMACM harmless from losses (including the loss of servicing rights), damages, deficiencies, claims or expenses (including reasonable attorneys' fees) incurred by GMACM to the extent that such loss, damage, deficiency, claim or expense results from or, in the case of a claim, is alleged to have resulted directly or indirectly from . . . Any circumstance which woudl constitute grounds for loan repurchase as set forth above.

(Doc. No. 28-1 at 7). Those provisions are enforceable under N.C. Gen. Stat. § 6-21.2. See Stillwell Enters., Inc., 266 S.E.2d at 817 (holding attorneys' fees provision of any contract "which evidences on its face a legally enforceable obligation to pay money" enforceable). GMAC has incurred $31,532.81 in attorneys' fees. See (Doc. No. 28-1 at 1-3: Hancock Affidavit).

GMAC is entitled to a default judgment of at least $535,005.61 in damages plus $31,532.81 in attorneys' fees, totaling $566,538.42.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that GMAC is entitled to a default judgment against Flick in an amount to be determined. GMAC shall file an affidavit within thirty (30) days establishing its damages through March 31, 2012.

---

[5] The Court notes that 15% of $535,005.61 is $80,250.84, an amount well in excess of that sought by GMAC.

Signed: March 31, 2012

Robert J. Conrad, Jr.
Chief United States District Judge